CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 0 1 2009

JOHN F. CORCORAN, CLERK
BY /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DONNIE R. DUNN,<br>          *Plaintiff,*<br><br>v.<br><br>MERIDIAN MORTGAGE, *and*<br>DOES 1 TO 50,<br>          *Defendants.* | CIVIL NO. 3:09CV00018<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

   This matter is before the Court on Defendant Meridian Mortgage's Motion to Dismiss (docket no. 5). In its Motion, Meridian seeks to dismiss Plaintiff Donnie Dunn's federal consumer protection law claims and related state law claims, all of which arise from Dunn's default on a $380,000 Note he gave to Meridian in September 2006. Because Meridian submitted several matters outside the pleadings with its Motion to Dismiss, I converted the Motion into one for summary judgment by Order dated April 17, 2009 (docket no. 17). As required by Federal Rule of Civil Procedure 12(d), Dunn was given ample opportunity to present additional evidence relevant to Meridian's Motion. Because the federal consumer protection laws at issue do not extend protection to the loan Dunn received, Meridian is entitled to judgment as a matter of law on Counts I through IV of the Complaint. I will decline to exercise supplemental jurisdiction over Dunn's remaining state law claims. Meridian's Motion will be granted in a separate Order to follow.

## I. Background

In September 2006, Dunn gave a Note for $380,000 to PR Investor Services, Inc. as an agent for Meridian's assignor, Meridian Mortgage Investors Fund VII, LLC. The Note was secured by a deed of trust on a 34.73 acre property in Albemarle County owned by Dunn. The property is unoccupied and has remained in Dunn's family for several decades. Dunn took out the $380,000 loan to "do some improvements" on some of his other investment properties and "keep things going" while he was attempting to sell the 34.73 Albemarle County property.

In the fall of 2007, Dunn defaulted on the Note and filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Virginia. On May 6, 2008, pursuant to a joint consent order agreed to by Dunn's counsel, U.S. Bankruptcy Court Judge William E. Anderson terminated the automatic stay on Dunn's obligation on the Note. Under the terms of the consent order, Dunn's Albemarle County property could be foreclosed upon if refinancing of the Note and settlement of the property was not accomplished within ninety days. Because Dunn did not refinance the Note and made no payments to Meridian, the bankruptcy trustee scheduled a deed of trust sale of the property for March 3, 2009.

On February 25, 2009, Dunn filed the instant claims against Meridian in state court. Meridian removed Dunn's complaint to this Court on March 12, 2009 and argues that the federal consumer protection laws cited in Counts I through IV of Dunn's complaint do not apply to commercial loans like the one Dunn received. Because Meridian submitted several exhibits that were not integral to the complaint, and because the characterization of Dunn's loan is a factual question, I converted Meridian's Motion into one for summary judgment.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250.

In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

3

trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

### III. DISCUSSION

Dunn alleges that, by issuing him the $380,000 loan and then attempting to foreclose upon his property, Meridian violated the Truth in Lending Act ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Debt Collection Practices Act ("FDCPA"). Meridian argues that Dunn's federal claims fail because the loan Dunn received was commercial in nature, and none of the statutes apply to loans for commercial or business purposes.

Indeed, TILA's requirements do not apply to extensions of credit primarily for business or commercial purposes. 12 C.F.R. § 226.3 (2009). The Act "applies only to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor. Credit transactions secured by real or personal property used for other purposes…fall outside the scope of TILA's coverage." *Antanuos v. First Nat'l Bank*, 508 F. Supp. 2d 466, 471 (E.D. Va. 2007). As an amendment to TILA, HOEPA also does not apply to extensions of credit primarily for business or commercial purposes. *See* 12 C.F.R. § 226.3; *Provencher v. T&M Mortg. Solutions, Inc.*, 2008 U.S. Dist. LEXIS 47616 (D. Me. June 18, 2008).

4

Dunn cannot state viable claims against Meridian under TILA or HOEPA because there is no genuine factual dispute that Meridian's loan to Dunn was for business and commercial purposes. When Dunn applied to Meridian for the loan, he stated that the money would allow him to make improvements on his other investment properties and "keep things going" while he attempted to sell the property. Although, as Dunn points out, the property is not zoned commercial and the loan documents do not state that the loan was a "commercial" loan, those factors have no bearing on the fact that Dunn took out the loan for business and commercial purposes: to fund improvements on his other investment properties. There is also no dispute as to whether Dunn keeps his principal residence on the property. The property is unoccupied, and Dunn clearly stated on his loan application that he did not intend to occupy the property as his primary residence. Because there is no genuine dispute of material fact concerning the commercial nature of the loan or the fact that the property was not used by Dunn as his principal residence, Meridian is entitled to judgment as a matter of law on Dunn's TILA and HOEPA claims.

Just like TILA and HOEPA, RESPA "does not apply to credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes." 12 U.S.C. § 2606. Nor does the Act apply to a loan on a property of greater than twenty-five acres. 24 C.F.R. § 3500.5 (2009). *See Atuahene v. Sears Mortg. Corp.*, 2000 U.S. Dist. LEXIS 1017 (E.D. Pa. Feb. 4, 2000) (dismissing RESPA claim where plaintiff failed to carry his burden to show that his dispute avoided the business purpose exemption of RESPA). As explained above, there is no genuine dispute that Dunn took out the loan from Meridian for commercial purposes. Nor is there any dispute that the property Dunn used to secure the Note was 34.73 acres – well over the twenty-five acre limit. For these reasons, Meridian is entitled to judgment as a matter of law on

5

Dunn's RESPA claim.

Finally, Meridian is also entitled to judgment as a matter of law on Dunn's FDCPA claim. The FDCPA was enacted by Congress to protect consumers from unfair debt collection practices. *Carroll v. Wolproff & Abramson*, 961 F.2d 459, 460 (4th Cir. 1992). "[A] threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" *Mabe v. G.C. Svcs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994). The FDCPA defines a "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household purposes*.

15 U.S.C. § 1692a(5) (emphasis added). Furthermore, "the type of 'transaction' which creates a 'debt' under the FDCPA is one in which 'a consumer is offered or extended the right to acquire money, property, insurance, or services which are primarily for *household* purposes and to defer payment.'" *Mabe*, 32 F.3d at 88 (internal quotations and citations omitted) (emphasis added); *see also Adkins v. Mathews Nichols & Assocs., LLC*, 2008 U.S. Dist. LEXIS 15742 (W.D. Va. Feb. 29, 2008). As explained above, there is no genuine dispute that Dunn took out the loan from Meridian for a business, not a personal or household, purpose: to fund improvements on other investment properties. Accordingly, Dunn's obligation to Meridian is not a "debt" covered by the FDCPA, and Meridian is entitled to judgment as a matter of law on Dunn's FDCPA claim.

## IV. CONCLUSION

There is no genuine factual dispute that Dunn took out the loan from Meridian for a business and commercial purpose: to fund improvements on other investment properties. TILA, HOEPA, and RESPA do not apply to extensions of credit made for primarily business or commercial purposes. Similarly, the FDCPA does not extend protection to the type of "debt"

6

Dunn owes Meridian. For these reasons, Meridian is entitled to judgment as a matter of law on each of Dunn's federal claims. Although Dunn asserts several other state law claims against Meridian, I decline to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Accordingly, Counts V through VII will be dismissed without prejudice in a separate Order to follow.

The Clerk of Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Mr. Dunn.

It is so **ORDERED**.

Entered this ____ day of May, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE